· ARMSTRONG v. MARTIN.

1. BROKERS—VENDORS AND PURCHASERS—FRAUD.
   In an action by brokers for their commissions on securing a
   purchaser for defendant's farm, which he offered to sell for
   $9,000, payable $1,000 down and $500 a year, inclusive of in-
   terest at six per cent., the contract was not so unconscion-
   able or fraudulent because of the small initial and subsequent
   annual payments, and by reason of the fiduciary relations of
   broker and principal, that the plaintiffs were barred from re-
   covering.[1]

2. SAME—OFFER AND ACCEPTANCE—CONTRACTS.
   Held, that a written offer, followed by a counter proposition
   signed by defendant and accepted by an intending purchaser,
   constituted a binding contract to sell the farm.

3. SAME.
   Having found a purchaser ready, willing, and able to purchase
   the property, the brokers were entitled to their commission.

Error to Kent; Clink, J., presiding. Submitted June
11, 1912. (Docket No. 71.) Decided July 11, 1912.

Assumpsit by William B. Armstrong and another
against James Martin for brokers' commissions. A judg-
ment for defendant on a verdict directed by the court is
reviewed by plaintiffs on writ of error. Reversed.

*Benn M. Corwin*, for appellants.

*Lombard, Hext & Washburn*, for appellee.

BROOKE, J. Action in assumpsit, brought to recover
a real estate commission. The contract was in writing,
as follows:

"GRAND RAPIDS, MICH., Oct. 29th, 1910.
"I hereby authorize and appoint Armstrong & Co. to
act as my agents in the sale of the within described prop-

---

[1] As to performance by real estate broker of his contract to find a
purchaser for, or effect an exchange of, his principal's property, see
note in 44 L. R. A. 593.

erty, and it is expressly understood and agreed that if the same is sold or disposed of while they are acting as such agents, they shall be entitled to a commission of 5 per cent. of the price received for said property, as compensation for their services. Agency to terminate upon thirty days written notice from me. It is agreed that cancellation of this contract shall not deprive the agents of their commission if a sale is made to one of their former customers.

[Signed]     "JAMES MARTIN. [L. S.]"

After the execution of the contract various conferences were had between plaintiff and defendant. Plaintiff testified:

"Mr. Martin came into our office afterwards, and talked with me in regard to the sale of this property. I couldn't say how many times he was there between the 29th day of October and the 2d day of December, 1910. He was there several times. At those different times when he was there we had conversation in regard to the sale of the property, and he stated what he would be willing to take and what terms he would be willing to sell the farm on. Mr. Martin stated to me that the present arrangements in regard to his farm were very unsatisfactory, that his tenant was unsatisfactory, and he was getting very little returns from the farm, and would be willing to sell the farm on most any terms in order to get the money out at interest. He further stated to me $500 a year would be sufficient for him to live on, and, if he could get the farm sold, he would be willing to have the interest only as an income. He said he wanted to get this money to drawing interest. He told me he was getting $300 a year rent, as I remember, and had to pay the taxes and insurance. There were some potatoes and apples that he got each year; got apples when there was any."

On December 2, 1910, plaintiff secured the following written offer:

"GRAND RAPIDS, MICH., December 2, 1910.
"Mr. JAMES MARTIN,
        "No. 63 Pleasant St., City.
"Dear Sir: I hereby offer through your agents, 'Armstrong & Co.,' the sum of nine thousand ($9,000) dollars for your farm of eighty acres, located in Paris town-

ship. Payments on same to be made as follows: Five hundred (500) dollars cash in hand, and five hundred (500) dollars April 1st, 1911, when I take possession of farm, and five hundred (500) dollars or more, including interest at the rate of 5% each year thereafter, until principal sum of nine thousand (9000) dollars has been paid.

"Respectfully subscribed,

[Signed]      "M. J. VAN DEN BERGE."

This proposition was submitted to defendant, who on the following day made a counter proposition:

"GRAND RAPIDS, MICH., Dec. 3rd, 1910.
"M. J. VAN DEN BERGE,
                "City.

"Dear Sir:

"I will accept your offer of the 2nd inst. for my farm of eighty acres in Paris Township according to your terms, excepting rate of interest which must be 6%. I also will give you the following farm tools: 1 lumber wagon, 1 market wagon, 3 hand cultivators, 1 Oliver plow, 1 new Silo, now in barn, 1 McCormick Grain-Binder, 1 Cream Separator, and all other personal property of mine now on the farm.

[Signed]      "JAMES MARTIN.
               "M. J. VAN DEN BERGE."

This offer was accepted by Van den Berge on the same day; his acceptance thereof being indicated by his signature. Later a land contract in the usual form was prepared by plaintiffs, and submitted to defendant for his signature. This the defendant refused to execute.

Plaintiff offered the testimony of Van den Berge to the effect that he was willing and abundantly able to carry out the contract. At the conclusion of the plaintiff's case, the court upon his own motion directed a verdict in favor of defendant. He said in part:

"But that is not this case. Up to the 3d day of December there were no conditions and terms that would fasten anybody or bind anybody. Now, on the 3d day of December the two principals undertook to make an agreement. They failed. That is the view the court has. Now, that is not the only view that I have, and I am stating my views so that, if I am wrong, you shall have

an opportunity now to correct the court, or show the court that it is wrong. I would just as lief overrule myself as have somebody else do it, if they can show me; but I will have to be shown. Now, another branch of this case that appeals to the court is this: The parol proof which the court admitted immediately after the noon recess, the determination of which was pending when we took our recess, is admitted under much doubt; but, in view of the way I felt about the case, I decided to admit that testimony, and see what it would develop. Now, with reference to it, if all that you claim is legally established with reference to the facts, you were compelling this defendant to take a contract by which a $9,000 farm was sold on conditions under which he could only enforce the payment of $20 a year upon the principal of $9,000. It would take five years to get $100 of principal. It would take 50 years to get $1,000 of principal. Eight times 50 would be 400! In the judgment of this court, in view of the fact that these agents occupied a fiduciary relation to this defendant and were bound to procure for him a rational deal at least, that sort of a contract, in the judgment of this court, would be a fraud in law. I do not mean by that that the plaintiffs were dishonest and intended to commit any fraud, but I mean it would be a fraud in law against this defendant, and no court could sanction it. I have no doubt in my own mind but what the defendant is sane. I do not know whether he is or not. The law presumes he is a sane man. If he is sane, I have no doubt but what the defendant believed and understood that he was to receive a payment of $500 a year besides the interest. Even that, the men who have any experience in dealing in real estate, if we exercise our common sense and judgment, we know the fact it would be a most meager payment upon a $9,000 farm at least; a most meager payment, if he got $500 a year besides the interest."

We are compelled to disagree with the learned circuit judge. He says the parties failed to make an agreement. We think the evidence in the case conclusively establishes the contrary.

Nor do we agree that the contract as entered into was a fraud in law, irrational, or unfair. A cash payment of $1,000 upon a purchase price of $9,000 is not, in our opin-

ion, either inadequate or unusual. The payment of the balance of $8,000 in sums of $500 per year or more, including interest, would, it is true, consume some 55 years in its extinguishment, provided that $500 only was paid each year. Such contracts, however, are not unusual. Each year the contract security would become more valuable, and the contract itself more readily salable. In any event, this is the contract defendant made, and his circumstances may have justified him in desiring to put his farm into what may be regarded, as, in a sense, a permanent investment. It is clear that, by the terms of the contract, he would not only receive cash to the amount of $1,000, but his annual income would be practically doubled, while his security under a contract properly protecting his rights as vendor (which was tendered) would remain absolute.

There is not a word of testimony in the record tending to show that defendant believed and understood that he was to receive $500 per year besides the interest; indeed, the evidence shows exactly the converse.

It is not necessary to cite authority to the effect that, when the broker finds a purchaser ready, willing, and able to complete the purchase upon terms agreeable to the vendor, he is entitled to his commission.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.